ORIGINAL

1  WILLIAM BLUMENTHAL
   General Counsel

2
   THOMAS J. SYTA, Bar # 116286
3  RAYMOND E. MCKOWN, Bar # 150975
   JENNIFER M. BRENNAN, Bar # 225473
4  Federal Trade Commission
   10877 Wilshire Blvd., Ste. 700
5  Los Angeles, CA 90024
   (310) 824-4343 (voice)
6  (310) 824-4380 (fax)
   tsyta@ftc.gov
7  rmckown@ftc.gov
   jmbrennan@ftc.gov
8
   Attorneys for Plaintiff
9  Federal Trade Commission

10  ___ Docketed
    _X_ Copies / NTC Sent
11  _X_ JS - 5 / JS - 6
    ___ JS - 2 / JS - 3
12  ___ CLSD

13          FEDERAL TRADE COMMISSION,

14                          Plaintiff,

15          v.

16

17  CONSUMERINFO.COM., INC., a
    corporation,
18
    doing business as
19
    EXPERIAN CONSUMER DIRECT,
20  QSPACE, INC.,
    and IPLACE INC.,
21

22                          Defendant.

23

24          Plaintiff, Federal Trade Commission ("FTC" or "Commission") is

25  concurrently filing its Complaint, which alleges that Defendant Consumerinfo.com,

26  Inc., doing business as Experian Consumer Direct, Qspace, Inc., and Iplace, Inc.,

27

FILED
CLERK, U.S. DISTRICT COURT

AUG 29 2005

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority ____
Send      _X_
Enter     _X_
Closed ____
JS-5/JS-6 _X_
JS-2/JS-3 ____
Scan Only ____

LODGED

AUG 15 2005

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SACV05-801 AHS(MLGx)

CV

**STIPULATED FINAL
JUDGMENT AND ORDER
FOR PERMANENT
INJUNCTION**

ENTERED

AUG 31 2005

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA OFFICE
BY _____ DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

Page 1 of 41

1  has engaged in unfair or deceptive acts or practices in violation of Section 5 of the

2  FTC Act, 15 U.S.C. § 45, in connection with the marketing of consumer reports

3  and credit monitoring programs.  The parties have agreed to the entry of this

4  Stipulated Final Judgment and Order for Permanent Injunction ("Order") to resolve

5  all matters in dispute in this action without trial or adjudication of any issue of law

6  or fact herein and without Defendant admitting liability for any of the matters

7  alleged in the Complaint.  Defendant has waived service of the Summons and

8  Complaint.

9

10  **THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND**

11  **DECREED** as follows:

12  <u>**FINDINGS**</u>

13      1.    This Court has jurisdiction over the subject matter of this case and

14  over Defendant Consumerinfo.com, Inc. dba Experian Consumer Direct,  Qspace,

15  Inc. and Iplace, Inc.

16      2.    Venue in this district is proper under 28 U.S.C. § 1391(b) and (c), and

17  15 U.S.C. § 53(b).

18      3.    The acts and practices of Defendant are in or affecting commerce, as

19  "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

20      4.    The Complaint states claims upon which relief may be granted against

21  Defendant under Sections 5 and 13(b) of the FTC Act, 15 U.S.C.

22  §§ 45 and 53(b).

23      5.    Defendant makes no admissions as to the allegations in the Complaint,

24  other than the jurisdictional facts.

25      6.    Defendant waives: (a) all rights to seek appellate review or otherwise

26  challenge or contest the validity of this Order; (b) any claim Defendant may have

27

1  against the Commission, its employees, representatives, or agents that relate to the

2  matter stated herein; (c) all claims under the Equal Access to Justice Act, 28 U.S.C.

3  § 2412, as amended by Pub. L. 104-121, 110 Stat. 847, 863-64 (1996); and (d) any

4  rights to attorneys' fees that may arise under said provision of law.

5      7.    Entry of this Order is in the public interest.

6

7                          **DEFINITIONS**

8      For purposes of this Order, the following definitions shall apply:

9      1.    "Assisting Others" means knowingly formulating or providing, or

10  arranging for the formulation or provision of, any marketing materials.

11     2.    "Billing Information" means any data that enables any person to

12  access a customer's account, such as a credit card, checking, savings, share or

13  similar account, utility bill, mortgage loan account, or debit card.

14     3.    "Clearly and Conspicuously" means:

15          a.    in print communications, the message shall be in a type size and

16  location sufficiently noticeable for an ordinary consumer to read and comprehend

17  it, in print that contrasts with the background against which it appears;

18          b.    in communications disseminated orally, the message shall be

19  delivered in a volume and cadence sufficient for an ordinary consumer to hear and

20  comprehend it;

21          c.    in communications made through an electronic medium (such as

22  television, video, radio, and interactive media such as the Internet, online services

23  and software), the message shall be presented simultaneously in both the audio and

24  visual portions of the communication. In any communication presented solely

25  through visual or audio means, the message may be made through the same means

26  in which the communication is presented. Any audio message shall be delivered in

27

1  a volume and cadence sufficient for an ordinary consumer to hear and comprehend

2  it. Any visual message shall be of a size and shade, with a degree of contrast to the

3  background against which it appears and shall appear on the screen for a duration

4  and in a location, sufficiently noticeable for an ordinary consumer to read and

5  comprehend it; and

6          d.    regardless of the medium used to disseminate it, the message

7  shall be in understandable language and syntax. Nothing contrary to, inconsistent

8  with, or in mitigation of the message shall be used in any communication.

9      4.    In the case of advertisements disseminated by means of an interactive

10  electronic medium such as software, the Internet, or online services, "in close

11  proximity" shall mean on the same webpage, online service page, or other

12  electronic page, and proximate to the triggering representation, and shall not

13  include disclosures accessed or displayed through hyperlinks, pop-ups, interstitials,

14  or other means.

15      5.    "Consumer Report" is synonymous in meaning and equal in scope to

16  the usage of the term as it is defined in Section 603(d) of the Fair Credit Reporting

17  Act, 15 U.S.C. § 1681a(d).

18      6.    "Credit Report" means a consumer report that is used or expected to

19  be used or collected in whole or in part for the purpose of serving as a factor in

20  establishing the consumer's eligibility for creditworthiness.

21      7.    "Credit Monitoring Program" means a program that enables a

22  consumer to access information related to substantive changes in his or her credit

23  history as recorded in his or her consumer report.

24      8.    "Defendant" means Consumerinfo.com, Inc. doing business as

25  Experian Consumer Direct, Qspace, Inc., and Iplace, Inc.

26      9.    "Document" is synonymous in meaning and equal in scope to the

27

1  usage of the term in Federal Rules of Civil Procedure 34(a), and includes writings,

2  drawings, graphs, charts, photographs, audio, and video recordings, computer

3  records, and other data compilations from which the information can be obtained

4  and translated, if necessary, through detection devices into reasonably usable form.

5  A draft or non-identical copy is a separate document within the meaning of the

6  term.

7      10.    "Free Credit Report/Credit Check Monitoring" (or, "CCM") means a

8  promotion offered by Consumerinfo.com, Inc., regardless of the name under which

9  the promotion was offered, wherein a consumer received a free credit report in

10 conjunction with enrollment on a trial conversion basis in a credit monitoring

11 program.

12     11.    "Full and Complete Refund" means a refund of any unrefunded

13 amount paid for the Free Credit Report/Credit Check Monitoring in the 12-month

14 membership period in which the cancellation took place, or the request for refund

15 or chargeback, or complaint about the charge, was made.  No consumer shall

16 receive a refund of more than the unrefunded amount paid in a single twelve-month

17 membership period.

18     12.    "Marketing Partner" means any third party with which Defendant has

19 an agreement under which Defendant agrees to provide order fulfillment services to

20 that third party in conjunction with that third party's advertising, promotion, offer,

21 or sale of any program in which the consumer receives a free credit report and is

22 enrolled in a credit monitoring program on a trial conversion basis and under which

23 Defendant does not have authority to control such advertising, promotion, offer, or

24 sale.

25     13.    "Material" when used in reference to the sale of goods or services

26 means likely to affect a person's choice of, or conduct regarding, goods or services.

27

14. A "Negative Option" offer or agreement is one to sell or provide goods or services under which: (a) a consumer must take an affirmative step to reject goods or services or cancel the agreement, and (b) the consumer's silence or failure to reject goods or services or to cancel the agreement would ordinarily be interpreted by the seller or provider as acceptance or continuing acceptance of the goods or services. Negative option offers or agreements include but are not limited to "Trial Conversion" offers, which are characterized by an offer of free products or services or a free trial period of products or services to consumers where, as a result of accepting the free products or services or the free trial period of products or services, consumers would ordinarily be required to contact Defendant to avoid receiving additional products or services and incurring a financial obligation for such additional products or services.

15. "Short-form advertisement" means any television or radio advertisement of less than sixty (60) seconds duration, Internet banner advertisement, or Internet pop-up advertisement.

## ORDER

## I.    PROHIBITED BUSINESS ACTIVITIES

**IT IS ORDERED** that Defendant and Defendant's successors, assigns, officers, agents, and all other persons or entities within the scope of Fed. R. Civ. P. 65, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity, including all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, in connection with the advertising, promoting, offering for sale, or sale of consumer reports, credit scores, credit monitoring programs, or any other product, program, or service relating to consumer reports, are hereby permanently restrained and

1    enjoined from:

2        A.    Misrepresenting, or assisting others in misrepresenting, expressly or

3    by implication, that consumers can obtain a free product, program, or service, a free

4    trial membership, or any such product, program, or service at no cost or obligation.

5        B.    Misrepresenting, or assisting others in misrepresenting, expressly or

6    by implication:

7            1.    the amount of any charge, bill, or fee, including but not limited

8    to, the cost of any consumer report or credit monitoring program;

9            2.    that a consumer will not be charged, billed, or assessed a fee;

10            3.    the timing or manner of any charge, bill, or fee assessment;

11            4.    that a consumer is legally obligated to pay a charge, bill, or fee

12    assessment; or

13            5.    that a consumer will not be charged, billed, or assessed a fee

14    without the consumer's authorization.

15        C.    Failing to make the following disclosures, clearly and conspicuously,

16    in conjunction with the advertising, promotion, or sale of any offer, other than a

17    promotion through a marketing partner, in which the consumer receives a free

18    credit report and is enrolled in a credit monitoring program on a trial conversion

19    basis:

20            1.    At least once in any short-form advertisement, Defendant shall

21    include the following disclosure, or words of similar import, in close proximity to

22    the free credit report representation:

23

24            "with enrollment in [name of credit monitoring program]"

25

26            2.    At least once in any other radio or television advertisement,

27

1  Defendant shall include the following disclosures:

2

3          When you order your free report, you will begin your free

4          trial membership in [name of credit monitoring program].

5          If you don't cancel within the 30 day [or other period]

6          trial period, you will be billed $12 [or other amount] for

7          each month [or other billing period] that you continue

8          your membership.

9

10         This offer is not related to the free credit report that you may be

11         entitled to under Federal law.  To obtain that free report, you must go

12         to www.annualcreditreport.com.

13

14  Provided that, in any radio or television advertisement longer than five (5) minutes

15  in duration, the disclosures required by this Subparagraph I.C.2. shall be made, at

16  Defendant's option, either immediately before each presentation of ordering

17  instructions, or at least once every five (5) minutes.

18

19         3.     In any other advertisement, and on any website or in any other

20  medium, including but not limited to telephone, email, or direct mail, in which a

21  consumer is able to enroll in the credit monitoring program, Defendant shall

22  include the following disclosures:

23                a.     on the landing page of the website or at the first point of

24         communication:

25

26                **IMPORTANT INFORMATION**

27

1    When you order your free report here, you

2    will begin your free trial membership in

3    [name of credit monitoring program]. If you

4    don't cancel your membership within the 30

5    day [or other period] trial period, you will be

6    billed $12 [or other amount] for each month

7    [or other billing period] that you continue

8    your membership. Under a new Federal law,

9    you may have the right to receive a free copy

10    of your credit report once every 12 months

11    from each of the three nationwide consumer

12    reporting companies. To request your free

13    annual report under that law, you must go to

14    www.annualcreditreport.com. [Name of

15    offering company] is not affiliated with the

16    annual free credit report program.

17

18    The reference to www.annualcreditreport.com shall be formatted to appear in

19    a blue color and underscored and shall be an active hyperlink such that a consumer

20    clicking on that hyperlink will be directed to that website. After September 1,

21    2005, the word "may" shall be deleted from the third sentence of the disclosure

22    required by this Subparagraph I.C.3.a.

23    The disclosure required by this Subparagraph I.C.3.a. shall be made in a

24    prominent location and in close proximity to the free credit report representation

25    and distinct from other text, such as inside a border; and

26            b.    clearly and conspicuously, and not pursuant to a link, at a

27

1    location between the landing page and the location where a

2    consumer submits an order:

3

4    "This offer is not related to the free credit report that you may

5    be entitled to under Federal law.  To obtain that free report, you

6    must go to www.annualcreditreport.com."

7

8    After September 1, 2005, the word "are" shall be substituted for the words

9    "may be" in the first sentence of the disclosure required by this Subparagraph

10   I.C.3.b.; and

11

12   c.    at the location or time that immediately precedes the point

13   at which the consumer completes the transaction, under the

14   heading **"PAYMENT INFORMATION"** in capital letters and

15   bold print, the following disclosure, or words of similar import::

16   "When you order your free report here, you will

17   begin your free trial membership in [name of credit

18   monitoring program].  If you don't cancel your

19   membership within the 30 day [or other period]

20   trial period, you will be billed $12 [or other

21   amount] for each month [or other billing period]

22   that you continue your membership."

23

24   All written or printed disclosures required by this Subparagraph I.C.3. shall

25   be in a type size that is no smaller than the type size of the principal text on the

26   page, but in no event smaller than 12-point type.

27

1          4.      On a website or in any other medium in which a consumer is

2    able to enroll in the credit monitoring program, Defendant shall disclose:

3                          a.     all material terms and conditions of any cancellation or

4                          refund policy, or if Defendant has a policy of not accepting

5                          cancellations or making refunds, a statement that this is

6                          Defendant's policy.  The disclosure required by this

7                          Subparagraph I.C.4.a. shall be made in the **"PAYMENT**

8                          **INFORMATION"** section referred to in Subparagraph I.C.3.c.;

9                          and

10                         b.     any other material terms or conditions of the offer.  The

11                         disclosure required by this Subparagraph I.C.4.b. shall be made

12                         in conformance with Subparagraphs I.D. and I.F.

13        D.      Representing, or assisting others in representing, expressly or by

14    implication, that any such product, program, or service is "free" or is available

15    without cost or obligation, unless Defendant discloses, clearly and conspicuously,

16    and in close proximity to the representation, all fees, costs, obligations or other

17    material terms or conditions associated with the offer, including the material terms

18    of any negative option offer.  Provided that, for the purposes of any offer covered

19    by Subparagraph I.C., compliance with that Subparagraph shall be deemed to be

20    compliance with this Subparagraph I.D.

21        E.      In conjunction with a promotion through a marketing partner in which

22    the consumer receives a free credit report and a credit monitoring program on a

23    trial conversion basis, failing to make the following disclosures:

24                  1.      the disclosure required under Subparagraph I.C.3.c.,

25    or words of similar import, which shall be made, clearly and conspicuously, (a) in

26    the **"Payment Information"** section on the ordering page referred to in

27

1   Subparagraph I.C.3.c., and (b) either in the promotional offer made by the

2   marketing partner or at the first point of contact between Defendant and the

3   consumer; and

4           2.      the disclosure required under Subparagraph I.C.3.b.,

5   or words of similar import, which shall be made, clearly and conspicuously, either

6   in the promotional offer made by the marketing partner or at the first point of

7   contact between Defendant and the consumer.  After September 1, 2005, the word

8   "are"  shall be substituted for the words "may be" in the first sentence of this

9   disclosure.

10          F.      Failing to disclose, clearly and conspicuously, before consumers are

11  asked to pay money, reveal billing information, or submit consideration, or before

12  any charge is incurred, all material terms and conditions of a negative option offer,

13  which include but are not limited to the following:

14          1.      the fact that the customer's account will be charged, billed, or

15  assessed a fee unless the customer takes affirmative action to avoid the charge, bill,

16  or fee assessment;

17          2.      when the charge, bill, or fee assessment will be submitted for

18  payment;

19          3.      the specific steps the customer must take to avoid the charge,

20  bill, or fee assessment;

21          4.      all material terms and conditions of a guarantee, refund, or

22  return policy, or if Defendant has a policy of not making refunds or accepting

23  returns, a statement that this is Defendant's policy;

24          5.      the fact that periodic shipments of products or the periodic

25  provision or the continuation of services will occur without further action by

26  consumers;

27

1           6.     if products are provided in shipments or services provided on a

2 periodic basis, a description of each good or type of good to be included in each

3 shipment or a description of the services that will be performed or continued;

4           7.     if products are shipped or services provided on a periodic basis,

5 the approximate interval between each shipment or service period or the number of

6 shipments or service periods per year;

7           8.     the cost or range of costs for each shipment or service period,

8 including shipping and handling costs; and

9           9.     the minimum number of purchases or minimum service period

10 required by Defendant, if any.

11 Provided that, for the purposes of any offer covered by Subparagraph I.C.,

12 compliance with that Subparagraph shall be deemed to be compliance with this

13 Subparagraph I.F.

14     G.     Causing billing information to be submitted for payment, directly or

15 indirectly, for any such product, program, or service advertised, promoted, offered

16 for sale, or sold as part of an offer or agreement involving a negative option offer,

17 without obtaining the express informed consent of consumers to be charged for any

18 such product, program, or service using an account identified with sufficient

19 specificity for consumers to understand what account will be charged, billed, or

20 assessed a fee. To evidence consumers' express informed consent, Defendant must

21 disclose, clearly and conspicuously, before consumers pay money, reveal billing

22 information, or submit consideration, all material terms and conditions of the offer

23 or agreement (including but not limited to those stated in Subparagraph I.F.), and

24 obtain consumers' express agreement to be charged.

25     H.     Failing to honor a request that Defendant receives to cancel any sale or

26 transaction involving a negative option offer, or to provide a refund in accordance

27

1    with Defendant's disclosed policies.

2

3                        **II.    CONSUMER REDRESS**

4         **IT IS FURTHER ORDERED** that:

5         A.    Defendant shall pay an amount sufficient to provide a full and

6    complete refund to any consumer who meets the following qualifications:

7               1.    The consumer was enrolled in the Free Credit Report/Credit

8    Check Monitoring ("CCM") during the period November 1, 2000, through

9    September 15, 2003 and was assessed a charge; and either:

10                        a.    within the first three years of the consumer's membership

11                              in CCM cancelled such membership and received a pro-rata

12                              refund; or

13                        b.    prior to entry of this Order, contacted, directly or

14                              indirectly, Defendant, the Commission, the Better Business

15                              Bureau of the Southland (Colton, California), any credit or debit

16                              card issuer, or any other third party to request a refund or

17                              chargeback of the charge, or to register a complaint about the

18                              charge, for the CCM offer.

19               2.    To identify all consumers who meet the qualifications of this

20    Subparagraph II.A. for receiving a refund, Defendant shall review the following

21    internal customer records as of June 20, 2005: (a) records of pro-rated refunds paid

22    to consumers who cancelled their membership within the first three (3) years of

23    membership; and (b) records that identify consumers in one or more of the

24    following customer service categories: (i) "billing - questioning charge," (ii)

25    "billing - general question," (iii) "possible credit card fraud," or (iv) "possible

26    identity theft."  Defendant also shall review any information it has received from

27

1    the Commission, the Better Business Bureau of the Southland (Colton, California),

2    any credit or debit card issuer, or any other third party. In addition, Defendant shall

3    provide a full and complete refund to any consumer if such consumer, within two

4    hundred and fifty-five (255) days after entry of this Order, produces documentation

5    sufficient to show that he or she meets the qualifications of this Subparagraph II.A.

6    Defendant shall make such refund within thirty (30) days after receiving the

7    consumer's documentation.

8          B.    Defendant shall make refund payments to consumers who meet the

9    qualifications set forth in Subparagraph II.A. in the following manner:

10            1.    Within sixty (60) days after entry of this Order, Defendant shall

11    attempt to obtain a credit for each such consumer on the consumer's credit or debit

12    card account that was used to enroll in the CCM promotion. Defendant shall send

13    a notice in the form set forth in Attachment A to each consumer for whom it has

14    obtained such a credit. Defendant shall send such notice by email to the

15    consumer's last known email address, or by first class mail to the consumer's last

16    known address. No other information shall be included or added to the notice.

17            2.    In the event that Defendant, despite reasonable efforts, is unable

18    to procure a credit on a consumer's credit or debit card account that was used to

19    enroll in the CCM promotion from the card issuer, Defendant shall deliver by

20    email, within thirty (30) days after the attempt to credit the consumer's account, or

21    ninety (90) days after entry of this Order, whichever is later, a Notice of Refund in

22    the form set forth in Attachment B to the last known email address of the

23    consumer. No other information shall be included or added to the notice. The

24    subject line of the email shall state: "Important: Notice of Refund for Credit

25    Monitoring." Defendant shall procure and utilize software technology sufficient to

26    establish whether the consumer has opened the email notice.

27

1          3.      In the event that Defendant, despite reasonable efforts:  (a) is

2    unable to provide a refund to a consumer as set forth in Subparagraph II.B.1., and

3    (b) is unable to provide an email notice or to demonstrate that the consumer opened

4    the email notice within thirty (30) days of sending the email notice to the

5    consumer, as set forth in Subparagraph II.B.2., Defendant shall mail a Notice of

6    Refund in the form set forth in Attachment C via first-class mail, postage prepaid,

7    to the last known address of the consumer.  Defendant shall mail such notice within

8    thirty (30) days of the last date on which a consumer may have opened the email

9    message as provided above, or one hundred and sixty five (165) days, after the

10   entry of this order, whichever is later.  The envelope enclosing the Notice of

11   Refund shall be in the form set forth in Attachment D.  No other information shall

12   be included or added to the mailing.  Defendant shall also retain a National Change

13   of Address System ("NCOA") licensee to update consumers' last known addresses

14   by processing them through the NCOA database.  For each mailing returned by the

15   U.S. Postal Service as undeliverable for which Defendant obtains a corrected

16   address, Defendant shall, within fifteen (15) business days after receiving the

17   corrected address, send the Notice of Refund to the corrected address.

18          4.      Defendant shall provide a refund to each consumer who, within

19   two hundred and fifty five (255) days after entry of this Order, or within thirty (30)

20   days of receiving a notice, whichever is sooner, requests a refund in response to a

21   notice provided by the means set forth in Subparagraphs II.B.2. or II.B.3., and who

22   produces documentation sufficient to show that he or she meets the qualifications

23   of Subparagraph II.A.  Within fifteen (15) days after receiving a request for refund

24   within the time period provided in the notice, Defendant shall provide refunds by

25   mailing a check via first class mail, postage prepaid, or by crediting the consumer's

26   credit or debit card account, at the consumer's option.  Defendant shall enclose

27

1   each refund check in an envelope that displays on its front, clearly and

2   conspicuously, the words "REFUND CHECK ENCLOSED." No other information

3   shall be included or added to the mailing, except that Defendant may provide

4   explanatory information relating to the refund.

5       C.    Defendant shall offer the right to cancel membership and receive a

6   pro-rated refund of the current membership period fee to each consumer who was

7   enrolled in the CCM promotion between November 1, 2000 and September 15,

8   2003, and is still enrolled as of the date of entry of this Order. Defendant shall

9   provide this right in the following manner:

10      1.    Within thirty (30) days after entry of this Order, Defendant shall

11  deliver a Notice of Right to Cancel in the form set forth in Attachment E by email

12  to the last known email address of the consumer. No other information shall be

13  included or added to the notice. The subject line of the email shall state:

14  "Important: Notice of Right to Cancel Credit Monitoring." Defendant shall procure

15  and utilize software technology sufficient to establish whether the consumer has

16  opened the email notice within thirty days.

17      2.    In the event that Defendant, despite reasonable efforts, is unable

18  to provide an email notice or to demonstrate that the consumer opened the email

19  notice within thirty (30) days of sending the email notice to the consumer, as set

20  forth in Subparagraph II.C.1., Defendant shall mail a Notice of Right to Cancel in

21  the form set forth in Attachment F via first-class mail, postage prepaid, to the last

22  known address of the consumer. Defendant shall mail such notice within fifteen

23  (15) days of the last date on which a consumer may have opened the email message

24  as provided above, or one hundred and thirty-five (135) days after the entry of this

25  order, whichever is later. The envelope enclosing the Notice of Right to Cancel

26  shall be in the form set forth in Attachment G. No other information shall be

27

1    included or added to the mailing. Defendant shall also retain a National Change of

2    Address System ("NCOA") licensee to update consumers' last known addresses by

3    processing them through the NCOA database. For each mailing returned by the

4    U.S. Postal Service as undeliverable for which Defendant obtain a corrected

5    address, Defendant shall, within fifteen (15) business days after receiving the

6    corrected address, send the Notice of Right to Cancel to the corrected address.

7              3.      Defendant shall cancel the CCM membership, provide a

8    pro-rated refund (calculated on a daily basis) for the cancelled portion of the

9    membership, and refrain from charging any account, billing, or otherwise

10    collecting or attempting to collect any payment, for each consumer who, within

11    one hundred twenty (120) days after entry of this Order, or within thirty (30) days

12    after receiving the Notice of Right to Cancel, whichever is later, requests

13    termination of his or her membership, in any manner, in response to a Notice of

14    Right to Cancel, or who otherwise demonstrates that he or she is eligible to cancel

15    his or her membership. Within fifteen (15) days after receiving a request for

16    refund, Defendant shall provide the refund by mailing a check via first class mail,

17    postage prepaid, or by crediting the consumer's credit or debit card account, at the

18    consumer's option. Defendant shall enclose each refund check in an envelope that

19    displays on its front, clearly and conspicuously, the words "REFUND CHECK

20    ENCLOSED." No other information shall be included or added to the mailing,

21    except that Defendant may provide explanatory information relating to the refund.

22       D.      For a period of two hundred and fifty five (255) days from the date of

23    entry of this Order, Defendant shall provide and adequately staff during ordinary

24    business hours, a toll-free telephone number to answer questions, provide

25    information, and accept requests for termination of membership and/or refunds

26    pursuant to this Order. Defendant shall also provide an email address at which

27

1  consumers can ask questions, request information and request termination of

2  membership and/or refunds pursuant to this Order. Defendant shall send an

3  automated reply message to each consumer who sends an email to that email

4  address acknowledging receipt of the email and stating that Defendant will respond

5  to each question and request received at such email address within two (2) business

6  days of receipt. Defendant shall respond to each question and request received at

7  such email address within two (2) business days of receipt.

8      E.   The accounts upon which any refund checks are drawn shall remain

9  open for at least ninety (90) days after Defendant sends such refund checks.

10     F.   Within ten (10) business days after entry of this Order, Defendant shall

11 pay nine hundred and fifty thousand dollars ($950,000) to the Commission. In

12 addition, in the event that any refund checks issued pursuant to this Subparagraph

13 II. remain uncashed ninety (90) days after Defendant sends such refund checks, or

14 two hundred ten (210) days after entry of this Order, whichever is later, Defendant

15 shall pay to the Commission the amount of those uncashed checks. The

16 Commission may apply the funds paid pursuant to this Subparagraph II.F. for such

17 other equitable relief (including additional consumer restitution and consumer

18 information remedies) as it determines to be reasonably related to Defendant's

19 practices as alleged in the Complaint. Any funds not used for such equitable relief

20 will be deposited with the United States Treasury as disgorgement. Defendant

21 shall have no right to challenge the Commission's choice of remedies under this

22 Subparagraph II.F. No portion of any payments under this Order shall be deemed a

23 payment of any fine, penalty, or punitive assessment.

24     G.   Within two hundred and seventy (270) days after entry of this Order,

25 Defendant shall furnish to the Commission the following:

26         1.   the total number of:

27

a. consumers whose credit or debit card account was credited pursuant to Subparagraph II.B.1., and the date issued and amount of each credit;

b. consumers who were sent a Notice of Refund by email pursuant to Subparagraph II.B.2.;

c. consumers who failed to open the emailed Notice of Refund;

d. consumers who were sent a Notice of Refund by first-class mail pursuant to Subparagraph II.B.3.;

e. consumers who were sent a refund check pursuant to Subparagraph II.B.4., and the amount, check number, and mailing date of each check;

f. consumers who cashed, deposited, or otherwise redeemed their refund checks;

g. consumers who were sent a Notice of Right to Cancel by email pursuant to Subparagraph II.C.1.;

h. consumers who failed to open the emailed Notice of Right to Cancel;

i. consumers who were sent a Notice of Right to Cancel by first-class mail pursuant to Subparagraph II.C.2.;

j. consumers who requested termination of their membership in the CCM;

k. consumers whose credit or debit card account was credited with a pro-rated refund pursuant to Subparagraph II.C., and the date issued and amount of each credit;

l. consumers who were sent a pro-rated refund check

1                            pursuant to Subparagraph II.C., and the amount, check

2                            number, and mailing date of each check;

3           m.     consumers who cashed, deposited, or otherwise redeemed

4                            their pro-rated refund checks; and

5           n.      "undeliverable" notices mailed to consumers pursuant to

6                            this order and returned to Defendant.

7    2.     Defendant shall provide on request from the Commission, within ten

8 (10) business days, in computer readable form and in computer print-out form:

9           a.      the identity of any consumer that is included in Subparagraph

10                            II.G.1;

11           b.      all other documents and records evidencing efforts made and

12                            actions taken by Defendant to identify, locate, contact, and

13                            provide refunds to persons eligible to receive refunds pursuant

14                            to Subparagraph II.A. and II.B; and

15           c.      all other documents and records evidencing efforts made and

16                            actions taken by Defendant to identify, locate, contact, and

17                            provide refunds to persons eligible to cancel their membership

18                            pursuant to Subparagraph II.C;

19    H.     Defendant may destroy all records relating to the distribution of this

20 consumer redress six (6) years after the last of the funds are credited, delivered to

21 the Commission, or delivered to the FTC Treasury account, provided that, no

22 records shall be destroyed unless and until a representative of the Commission has

23 received and approved the final accounting report pertaining to Defendant's

24 payment. Records shall be destroyed in accordance with disposal methods and

25 procedures to be specified by the Commission. The Commission may, in its sole

26 discretion, require that such records, in whole or in part, be transferred, in lieu of

27

1  destruction, to the Commission.

2

3  **III.    RELIANCE ON DISCLOSURES**

4  **IT IS FURTHER ORDERED** that:

5  A.    The Commission's agreement to this Order is expressly premised upon

6  the truthfulness, accuracy, and completeness of the consumer complaint, refund,

7  purchase data, and other information provided by Defendant and dated June 24,

8  2005.  Such data constitute material information relied upon by the Commission in

9  negotiating and agreeing to the terms of this Order.

10  B.    If, upon motion by the Commission, this Court finds that Defendant

11  made any material misrepresentation in or omitted material information from the

12  data provided, this matter shall be reopened to allow Plaintiff to show that

13  additional relief, including but not limited to additional equitable monetary relief,

14  consumer restitution, or disgorgement of ill-gotten gains should be entered against

15  Defendant.  Plaintiff shall have the right to engage in reasonable discovery for this

16  purpose.  Upon a sufficient showing by Plaintiff, the Court shall enter a revised

17  Order against Defendant, which will become immediately due and payable, in

18  addition to such other ancillary relief the Court deems proper.

19  C.    In the event this matter is reopened pursuant to this Paragraph III,

20  Defendant shall have no right to seek modification or abrogation of this Order, and

21  all other Paragraphs of this agreement and Order shall remain in full force and

22  effect unless otherwise ordered by this Court.

23  D.    Any proceedings instituted under this Paragraph III are in addition to,

24  and not in lieu of, any other civil or criminal remedies as may be provided by law,

25  including any other proceedings that the FTC may initiate to enforce this Order.

26  E.    For purposes of this Paragraph III and any subsequent proceedings to

27

1  enforce payment, including but not limited to a non-dischargeability complaint

2  filed in a bankruptcy proceeding, Defendant waives any right to contest any of the

3  allegations in the Commission's Complaint.

4

5  ## IV.   COMPLIANCE MONITORING

6  **IT IS FURTHER ORDERED** that, for the purpose of monitoring and

7  investigating compliance with any provision of this Order,

8  A.    Within fifteen (15) days of receipt of written notice from a

9  representative of the Commission, Defendant shall submit additional written

10 reports, sworn to under penalty of perjury; produce documents for inspection and

11 copying; appear for deposition; and/or provide entry during normal business hours

12 to any business location in Defendant's possession or direct or indirect control, to

13 inspect the business operation.

14 B.    In addition, the Commission is authorized to monitor compliance with

15 this Order by all other lawful means, including but not limited to the following:

16 1.    obtaining discovery from any person, without further leave of

17 Court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and

18 45.

19 2.    posing as consumers and suppliers to Defendant, Defendant's

20 employees, or any other entity managed or controlled in whole or in part by

21 Defendant, without the necessity of identification or prior notice.

22 C.    Defendant shall permit representatives of the Commission to interview

23 any employer, consultant, independent contractor, representative, agent, or

24 employee who has agreed to such an interview, relating in any way to any conduct

25 subject to this Order.  The person interviewed may have counsel present.

26 Provided that nothing in this Order shall limit the Commission's lawful use

27

1  of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§

2  49, 57b-1, to obtain any documentary material, tangible things, testimony, or

3  information relevant to unfair or deceptive acts or practices in or affecting

4  commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

5

6           **V.    COMPLIANCE REPORTING BY DEFENDANT**

7           **IT IS FURTHER ORDERED** that, in order that compliance with the

8  provisions of this Order may be monitored:

9           A.      For a period of three (3) years from the date of entry of this Order,

10  Defendant shall notify the Commission of any changes in corporate structure that

11  may affect compliance obligations arising under this Order, including but not

12  limited to a dissolution, assignment, sale, merger, or other action that would result

13  in the emergence of a successor entity; the creation or dissolution of a subsidiary,

14  parent, or affiliate that engages in any acts or practices that are subject to this

15  Order; the filing of a bankruptcy petition; or a change in the corporate name or

16  address, at least thirty (30) days prior to such change, provided that, with respect to

17  any proposed change in the corporation about which Defendant learns less than

18  thirty (30) days prior to the date such action is to take place, Defendant shall notify

19  the Commission as soon as is practicable after obtaining such knowledge.

20           B.      Three hundred (300) days after the date of entry of this Order,

21  Defendant shall provide a written report to the FTC, sworn to under penalty of

22  perjury, setting forth in detail the manner and form in which it has complied and is

23  complying with this Order.  This report shall include, but not be limited to:

24                   1.      any changes required to be reported pursuant to Subparagraph

25  V.A.

26                   2.      a copy of each acknowledgment of receipt of this Order

27

1  obtained pursuant to Paragraph VII.

2        3.    the total amount of consumer restitution paid to Consumerinfo

3  customers under Paragraph II.

4      C.    For the purposes of this Order, Defendant shall, unless otherwise

5  directed by the Commission's authorized representatives, mail all written

6  notifications to the Commission to:

7      Western Region, Federal Trade Commission
    10877 Wilshire Boulevard, Suite 700

8      Los Angeles, California 90024
    RE: FTC v. Consumerinfo.com, Inc.

9

10      D.    For purposes of the compliance reporting and monitoring required by

11  this Order, the Commission is authorized to communicate directly with Defendant.

12

13  **VI.   RECORD KEEPING**

14      **IT IS FURTHER ORDERED** that, for a period of six (6) years from the

15  date of entry of this Order, in connection with any business where Defendant is the

16  majority owner of the business or directly or indirectly manages or controls the

17  business, Defendant and its agents, employees, officers, corporations, successors,

18  and assigns, and those persons in active concert or participation with them who

19  receive actual notice of this Order by personal service or otherwise, are hereby

20  restrained and enjoined from failing to create and retain the following records:

21      A.    Accounting records that reflect the cost of goods or services sold,

22  revenues generated, and the disbursement of such revenues.

23      B.    Personnel records accurately reflecting: the name, address, and

24  telephone number of each person employed in any capacity by such business; that

25  person's job title or position; the date upon which the person commenced work; and

26  the date and reason for the person's termination, if applicable.

27

C.   Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business.

D.   Complaints and refund requests (whether received directly, indirectly or through any third party) and any responses to those complaints or requests.

E.   Copies of all sales scripts, training materials, advertisements, or other marketing materials.

F.   All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order, required by Paragraphs VII and VIII, and all reports submitted to the FTC pursuant to Paragraphs II and V.

## VII.   DISTRIBUTION OF ORDER BY DEFENDANT

**IT IS FURTHER ORDERED** that, for a period of three (3) years from the date of entry of this Order, Defendant shall deliver copies of this Order as directed below:

A.   Defendant shall deliver a copy of this Order to all of its principals, officers, and directors, and to all managers who have responsibility directly or indirectly for any matters covered by this Order.  Defendant also shall deliver an accurate summary of this Order to all of its employees who are engaged in conduct related to the advertising, marketing, sale, or delivery of, or who respond to consumer complaints or inquiries regarding consumer reports, credit scores, or any credit monitoring program.  For current personnel, delivery shall be within five (5) days of service of this Order upon Defendant.  For new personnel, delivery shall occur prior to them assuming their responsibilities.

1    B.    Defendant must secure a signed and dated statement acknowledging

2  receipt of this Order, within thirty (30) days of delivery, from all persons receiving

3  a copy of the Order pursuant to this Paragraph VII.

4

5  ### VIII.    ACKNOWLEDGMENT OF RECEIPT OF ORDER

6  ### BY DEFENDANT

7    IT IS FURTHER ORDERED that Defendant, within five (5) business days

8  of receipt of this Order as entered by the Court, must submit to the Commission a

9  truthful sworn statement acknowledging receipt of this Order, in the form shown on

10 Attachment H.

11

12 ### IX.    RETENTION OF JURISDICTION

13    **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this

14 matter for purposes of construction, modification, and enforcement of this Order.

15

16 ### X.    COSTS AND ATTORNEYS' FEES

17    **IT IS FURTHER ORDERED** that each party shall bear its own costs and

18 attorneys fees incurred in connection with this action.

19

20 ### XI.    NOTICE OF ENTRY OF ORDER

21    **IT IS FURTHER ORDERED** that entry in the docket of this Order by the

22 Clerk of Court shall constitute notice to Defendant of the terms and conditions of

23 this Order, and that Defendant waives all rights to contest in any future proceeding

24 whether Defendant was properly served with this Order.

25

       The parties hereby stipulate to the entry of the foregoing Order, which shall

26 constitute a final Order in this action.

27

IT IS SO ORDERED

Dated AUG 2 9 2005

United States District Judge

**IT IS SO ORDERED:**

Dated this _____ day of _____, 2005.


_____
United States District Judge

**STIPULATED BY:**


_____
Thomas J. Syta, Esq.

Raymond E. McKown, Esq.

Jennifer M. Brennan, Esq.

Attorneys for Plaintiff

Federal Trade Commission


_____
Consumerinfo.com dba Experian

Consumer Direct, Qspace, Inc., and

Iplace, Inc.

by: Edward S. Ojdana

Chief Executive Officer


_____
by: Richard Grabowski, Esq.

Attorney for the Defendant

Jones Day

3 Park Plaza, Suite 1100

Irvine, California 92614-8505


_____
by:  Anne P. Fortney, Esq.

Attorney for the Defendant

Hudson Cook, LLP

1900 M Street, N.W., Suite 700

Washington, D.C. 20036

**ATTACHMENT A**

**NOTICE OF CREDITING OF ACCOUNT**

Dear [NAME]:

     Our records show that you received a free credit report from Consumerinfo.com or Freecreditreport.com sometime between November 1, 2000 and September 15, 2003.

     Our free credit report promotion came with a 30-day trial membership in our [name of credit monitoring program] credit monitoring program.  After 30 days, unless you cancelled, we automatically enrolled you in the credit monitoring program at an annual fee of $79.95.  The Federal Trade Commission (FTC) has alleged that we did not make clear to consumers that they needed to cancel the trial membership to avoid being charged.

     According to our records, you either cancelled your credit monitoring program membership or questioned the billing for the credit monitoring program, but didn't receive a full refund.  Although we disagree with the FTC's charges, we also want satisfied customers.  Therefore, we have reached an agreement with the FTC to pay full refunds to customers like you.  We have credited your [credit] [debit] card account in the amount of the annual fee for the applicable year, less any amount you may have already received. Your credit should appear on your card statement shortly.

     If you have any questions, please send an e-mail to
_____. We will respond within two business days.

Sincerely,

Consumerinfo.com, Inc.

**ATTACHMENT B**

**NOTICE OF REFUND**

Dear [NAME]:

Our records show that you received a free credit report from Consumerinfo.com or Freecreditreport.com sometime between November 1, 2000 and September 15, 2003.

Our free credit report promotion came with a 30-day trial membership in our [name of credit monitoring program] credit monitoring program. After 30 days, unless you cancelled, we automatically enrolled you in the credit monitoring program at an annual fee of $79.95. The Federal Trade Commission (FTC) has alleged that we did not make clear to consumers that they needed to cancel the trial membership to avoid being charged.

According to our records, you either cancelled your credit monitoring program membership or questioned the billing for the credit monitoring program, but didn't receive a full refund. Although we disagree with the FTC's charges, we also want satisfied customers. Therefore, we have reached an agreement with the FTC to pay full refunds to customers like you.

To receive your refund, please do **one** of the following:

- Reply to this email with your full name, address, and daytime telephone number, or write to the address listed below. We will mail a check to the address you give us; **or**

- Call us toll-free at [number] Monday through Friday between 9:00 a.m. and 5:00 p.m. (Pacific time).

Once we receive your information, we will provide your refund within a few weeks. The refund will be in the amount of the annual fee for the applicable year,

less any refund you may have already received. **You must send us your request within _____ days to be eligible for a refund.**

If you have any questions, please send an e-mail to

_____. We will respond within two business days.

Sincerely,

Consumerinfo.com, Inc.

[address]

# ATTACHMENT C
## NOTICE OF REFUND

Dear [NAME]:

    Our records show that you received a free credit report from Consumerinfo.com or Freecreditreport.com sometime between November 1, 2000 and September 15, 2003.

    Our free credit report promotion came with a 30-day trial membership in our [name of credit monitoring program] credit monitoring program. After 30 days, unless you cancelled, we automatically enrolled you in the credit monitoring program at an annual fee of $79.95. The Federal Trade Commission (FTC) has alleged that we did not make clear to consumers that they needed to cancel the trial membership to avoid being charged.

    According to our records, you either cancelled your credit monitoring program membership or questioned the billing for the credit monitoring program, but didn't receive a full refund. Although we disagree with the FTC's charges, we also want satisfied customers. Therefore, we have reached an agreement with the FTC to pay full refunds to customers like you. To receive your refund, please fill out the enclosed application form and return it to us at the address listed on the form, or call us toll-free at [number] Monday through Friday between 9:00 a.m. and 5:00 p.m. (Pacific Time). Once we receive your information, we will provide your refund within a few weeks. The refund will be in the amount of the annual fee for the applicable year, less any refund you may have already received. **You must send us your request within _____ days to be eligible for a refund.**

    If you have any questions, please send an e-mail to _____. We will respond within two business days.

Sincerely,

Consumerinfo.com, Inc.

## APPLICATION FORM

To request your refund, fill out the information below and return it to the address on this form.  **Note: this form must be returned by [date]**


Name:                                    _____

Address:                                 _____

City, State and Zip Code:           _____

Daytime phone number:            ( )_____


Consumerinfo.com, Inc.

[Return address]

**ATTACHMENT D**

Consumerinfo.com

[address]

FORWARDING AND RETURN POSTAGE GUARANTEED

[Address or address window]

**ATTENTION: REFUND INFORMATION ENCLOSED FOR CREDIT MONITORING CUSTOMERS**

**ATTACHMENT E**

**NOTICE OF RIGHT TO CANCEL**

Dear [NAME]:

Our records show that you received a free credit report from Consumerinfo.com or Freecreditreport.com and are a current customer of our [name of credit monitoring program] credit monitoring program.

Our free credit report promotion came with a 30-day trial membership in our [name of credit monitoring program] credit monitoring program. After 30 days, unless you cancelled, we automatically enrolled you in the credit monitoring program at an annual fee of $79.95. The Federal Trade Commission (FTC) has alleged that we did not make clear to consumers that they needed to cancel the trial membership to avoid being charged.

Although we disagree with the FTC's charges, we also want satisfied customers. Therefore, we have reached an agreement with the FTC to allow customers like you to cancel their credit monitoring program and receive a refund for the unused portion of the membership.

If you would like to continue your membership, you don't need to respond. We will continue to charge your account the annual fee of $79.95. If you would like to cancel your membership and receive a refund, please do one of the following:

- Reply to this email with your full name, address, and daytime telephone number, or write to the address listed below. We will cancel your membership and mail a refund check to the address you give us.
- Call us toll-free at [number] Monday through Friday between 9:00 a.m. and 5:00 p.m. (Pacific time).

Once we receive your information, we will provide your refund within a few weeks. The refund will be in the amount of the unused portion of your current membership term. **You must send us your request within _____ days to be eligible for a refund.**

If you have any questions, please send an e-mail to _____. We will respond within two business days.

Sincerely,

Consumerinfo.com, Inc.
[address]

# ATTACHMENT F
## NOTICE OF RIGHT TO CANCEL

Dear [NAME]:

Our records show that you received a free credit report from Consumerinfo.com or Freecreditreport.com and are a current customer of our [name of credit monitoring program] credit monitoring program.

Our free credit report promotion came with a 30-day trial membership in our [name of credit monitoring program] credit monitoring program. After 30 days, unless you cancelled, we automatically enrolled you in the credit monitoring program at an annual fee of $79.95. The Federal Trade Commission (FTC) has alleged that we did not make clear to consumers that they needed to cancel the trial membership to avoid being charged.

Although we disagree with the FTC's charges, we also want satisfied customers. Therefore, we have reached an agreement with the FTC to allow customers like you to cancel their credit monitoring program and receive a refund for the unused portion of the membership.

If you would like to continue your membership, you don't need to respond. We will continue to charge your account the annual fee of $79.95. If you would like to cancel your membership and receive a refund, please fill out the enclosed application form and return it to us at the address listed on the form, or call us toll-free at [number] Monday through Friday between 9:00 a.m. and 5:00 p.m. (Pacific Time). Once we receive your information, we will provide your refund within a few weeks. The refund will be in the amount of the unused portion of your current

membership term. **You must send us your request within _____ days to be eligible for a refund.**

If you have any questions, please send an e-mail to _____. We will respond within two business days.

Sincerely,


Consumerinfo.com, Inc.

## APPLICATION FORM

To cancel your credit monitoring program membership and receive a partial refund, fill out the information below and return it to the address on this form. **Note: this form must be returned by [date]**

Name:          _____

Address:       _____

City, State and Zip Code:      _____

Daytime phone number:  (   )_____


Consumerinfo.com, Inc.

[Return address]

# ATTACHMENT G

Consumerinfo.com

[address]


FORWARDING AND RETURN POSTAGE GUARANTEED




                                    [Address or address window]


**ATTENTION: IMPORTANT NOTICE ABOUT YOUR [name of credit monitoring program] CREDIT MONITORING**

# ATTACHMENT H

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | CV |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | AFFIDAVIT OF DEFENDANT CONSUMERINFO.COM doing business as EXPERIAN CONSUMER DIRECT, QSPACE, INC., and IPLACE, INC. |
| CONSUMERINFO.COM., INC., a corporation, | ) | |
| doing business as | ) | |
| EXPERIAN CONSUMER DIRECT, QSPACE, INC., and IPLACE INC., | ) | |
| Defendant. | ) | |

[Name of defendant's certifying official], being duly sworn, hereby states and affirms as follows:

1.    My name is_____. My current residence address is _____. I am a citizen of the United States and am over the age of eighteen. I have personal knowledge of the facts set forth in this Affidavit.

2.    I am an officer of defendant Consumerinfo.com in *FTC v. Consumerinfo.com* (United States District Court for the Central District of California).

3.    On _____, I received a copy of the Stipulated Final Judgment and Order for Permanent Injunction, which was signed by the Honorable _____ and entered by the Court on _____. A true and correct copy of the Order I received is appended to this Affidavit.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on _____, 2005, at _____.

1

2    By: _____

3

4    State of _____, City of _____

5

6        Subscribed and sworn to before me

7        this _____ day of _____, 2005.

8

9        _____

10        Notary Public

11        My Commission Expires:

12        _____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27